MORTIMER KAUFMAN, executor,[1] *vs.* ROBERT I. RICHMOND, executor,[2] & others.[3]

July 20, 2004. *Trust,* Reformation. *Taxation,* Generation skipping transfer tax.

Mortimer Kaufman, as executor of the estate of Rhoda Mae Kaufman (executor), filed a complaint in the Probate and Family Court seeking reformation of two disclaimers executed by Rhoda concerning her interest in property she was to receive from the estate and revocable trust of her mother, Celia Richmond. On the executor's motion, a Probate and Family Court judge reported the case to the Appeals Court. We granted the executor's application for direct appellate review. For the reasons stated below, we allow the requested reformations.

*Background.* Celia Richmond executed a will in 1995. Under its terms, all her real and personal property was to be transferred to the Celia Richmond Trust at the time of her death. One third of the trust property remaining after the payment of estate taxes and other expenses was to be paid to Celia's daughter, Rhoda. Celia died in March, 2002.

In February, 2002, Rhoda learned that she was terminally ill. She sought estate planning advice from an attorney, and was advised that she could disclaim all or a portion of her potential inheritance from Celia, and that the disclaimed property would pass tax free to her three children. Based on this advice, Rhoda executed two irrevocable disclaimers in October, 2002, with respect to property Celia owned in Massachusetts and Florida.[4]

The Massachusetts disclaimer contained the following language:

"I, Rhoda Mae Kaufman, the undersigned, do hereby renounce and

---

[1]Of the estate of Rhoda Mae Kaufman.

[2]Of the estate of Celia Richmond and as trustee of the Celia Richmond Trust, dated November 2, 1995.

[3]Mark Kaufman, Brian Kaufman, Karen Kaufman, and the Internal Revenue Service.

[4]Rhoda also executed a third irrevocable disclaimer with respect to property Celia owned in California. The executor, however, is not seeking reformation of the California disclaimer.

disclaim all of my rights, title, and interest in all of the property, real, personal, intangible and otherwise, situated in Hampden County, Massachusetts, bequeathed to me under the Will of Celia Richmond and the Celia Richmond Trust dated November 2, 1995."

The Florida disclaimer contained slightly different language:

"I, RHODA MAE KAUFMAN, do irrevocably renounce and disclaim in the favor of my aforesaid three children the residuary disposition made to me pursuant to the CELIA RICHMOND TRUST and the Last Will and Testament of CELIA RICHMOND, both dated November 2, 1995, including but not limited to, the following-described real property:

"Apartment No. 2-D, of Tower A, of ADMIRAL'S WALK, a condominium . . . TOGETHER with the exclusive right to use parking space number 2-D."

The Florida disclaimer — while executed in Massachusetts by Rhoda, a Massachusetts resident — was prepared by a Florida attorney, referenced Florida law and included a request "that the Circuit Court in and for Palm Beach County, Florida, accept and file this Disclaimer."

Some time after Rhoda executed the disclaimers, she learned that the disclaimed property might be subject to Federal generation skipping transfer (GST) taxes and that Celia's GST tax exemption at the time of her death was limited to $650,000, due, in part, to some transfers she had made during her lifetime to Rhoda's children. On April 22, 2003, Rhoda executed an affidavit stating that:

"7. I would not have executed a disclaimer of my entire inheritance from The Celia Richmond Trust (which is substantially in excess of $650,000) if I had been advised that a federal GST tax would be payable on all amounts disclaimed by me in excess of $650,000. Rather, I would have limited my disclaimer to the portion of my inheritance which could pass to my children through disclaimer free of gift tax or estate tax and also free of GST tax.

"8. Therefore, I consider my disclaimer(s) to have been executed by mistake to the extent that said disclaimer(s) may result in property passing to my children in excess of Celia Richmond's federal GST tax exemption."

Rhoda also requested that "the Court grant relief from the mistake by allowing one or more of the disclaimers to be reformed to avoid the unintended GST tax described in this affidavit." Rhoda died two days after executing her affidavit.

*Discussion.* This case presents two questions, one general and one specific. The first question is whether, as a matter of Massachusetts law, a disclaimer may be reformed. We determine that a disclaimer may be reformed in circumstances like those presented here, where there is decisive evidence of the decedent's intent to minimize tax consequences and where that intent was

clearly frustrated. See *Simches* v. *Simches*, 423 Mass. 683, 687, 688 (1996), quoting *Berman* v. *Sandler*, 379 Mass. 506, 509 (1980) (stating generally that "a written instrument" may be reformed "on the grounds of mistake upon 'full, clear, and decisive proof' of the mistake," and recognizing that "[i]n the area of trusts and estates, the reduction of taxes is often not just a factor affecting intent, but rather the overriding purpose of the entire transaction").

The second question is whether the two disclaimers at issue here should be reformed. With regard to the Massachusetts disclaimer, the answer is straightforward. Rhoda's affidavit is unequivocal: she would not have executed the disclaimer if she had known that it did not achieve her intended purpose of minimizing Federal tax consequences for her children. Therefore, the Massachusetts disclaimer may be reformed as requested.

With regard to the Florida disclaimer, the answer could have been complicated by a choice of law issue because the document concerned Rhoda's interest in Florida real property, referenced Florida law, and included a request that the disclaimer be recognized by the Florida courts. We ordered the parties to submit a supplemental brief addressing the issue. In that brief, the executor represented that the requested reformation of the Florida disclaimer likely would be permitted under Florida law, citing certain Florida cases. Assuming, without deciding, that this representation is accurate, the choice of law question evaporates. See *One Nat'l Bank* v. *Antonellis*, 80 F.3d 606, 608 (1st Cir. 1996) (court "can — and ordinarily should" accept parties' representations as to applicable substantive law in making choice of law determinations). It is a fundamental choice of law principle that only actual conflicts between the laws of different jurisdictions must be resolved. See *Cohen* v. *McDonnell Douglas Corp.*, 389 Mass. 327, 332 n.7 (1983) ("usual first step in applying conflict of law principles is to ascertain whether there is a conflict among the laws of the various States involved"). Choice of law analysis is unnecessary when that choice will not affect the outcome of the case. *Id.*, citing *Henderson* v. *State Farm Mut. Auto Ins. Co.*, 59 Wis. 2d 451, 454 (1973). Based on the executor's representation that the outcome likely would be the same under either Massachusetts or Florida law, we apply Massachusetts law and determine that the Florida disclaimer may be reformed as requested in light of Rhoda's stated intent to minimize her children's tax burden and the clear frustration of her intent.

Therefore, we remand the case to the Probate and Family Court for the entry of a judgment reforming the Massachusetts and Florida disclaimers as proposed.

*So ordered.*

*George L. Cushing* for the plaintiff.