NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

VERIZON WIRELESS PERSONAL
COMMUNICATIONS, LP,

      Appellant,

v.

      Case No.  2D18-161

CHRISTOPHER BATEMAN,

      Appellee.

_____

Opinion filed February 8, 2019.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Pinellas County;
Thomas H. Minkoff, Judge.

R. Eric Bilik, Emily Y. Rottmann, and Daniel
Mahfood of McGuire Woods LLP,
Jacksonville, for Appellant.

Katherine Earle Yanes and Brandon K.
Breslow of Kynes, Markman & Felman,
P.A., Tampa; and Brian L. Shrader and
Gus M. Centrone of Dunlap Bennett &
Ludwig, PLLC, Tampa, for Appellee.


LaROSE, Chief Judge.

      Verizon Wireless Personal Communications, LP, challenges the trial

court's nonfinal order denying its motion to compel arbitration.  We have jurisdiction.

See Fla. R. App. P. 9.030(b)(1)(B); 9.130(a)(3)(C)(iv). Because Christopher Bateman's statutory claims are not arbitrable, we affirm.[1]

## I.    Procedural and Factual Background

In 2011, Mr. Bateman obtained cell phone service from Verizon. Mr. Bateman agreed to the terms of Verizon's Customer Agreement. The Customer Agreement included an arbitration provision and stated that Verizon could unilaterally change the Customer Agreement at any time. Verizon revised the arbitration provision in 2012. The revised provision states, in relevant part, as follows:

> **YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. . . . WE ALSO BOTH AGREE THAT:**
>
> (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB"). YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN SEEK RELIEF AGAINST US FOR YOU.
>
> . . . .
>
> **(3) THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD. NOTWITHSTANDING ANY OTHER PROVISION OF THIS**

___

[1]We will not address whether Verizon waived its right to arbitrate because Mr. Bateman does not rely on waiver on appeal. See Kenyon v. Kenyon, 496 So. 2d 839, 840 (Fla. 2d DCA 1986) (holding an issue waived when the parties failed to brief the issue).

**AGREEMENT, THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. NO CLASS OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT.**

Mr. Bateman cancelled his Verizon service in March 2013.  A little more than a year later, Mr. Bateman filed a chapter 7 bankruptcy petition.  He identified Verizon as a general unsecured creditor for $481.  In August 2014, the bankruptcy court discharged Mr. Bateman's debts, including the Verizon debt, under 11 U.S.C. § 727 (2012).  As a result, Verizon was prohibited from trying to collect the discharged debt from Mr. Bateman.  See 11 U.S.C. § 524(a).

After the bankruptcy discharge, Verizon allegedly hired a debt collector, Convergent Outsourcing, Inc., to send Mr. Bateman a debt collection notice.  In mid-January 2015, Convergent sent a notice telling Mr. Bateman that he owed Verizon $568.02 but that Convergent would settle the claim for about $200.

Mr. Bateman sued Verizon and Convergent in federal district court, alleging that Verizon violated the Florida Consumer Collection Practices Act (FCCPA), and that Convergent violated the FCCPA and the Federal Debt Collection Practices Act (FDCPA).  See Bateman v. Verizon Wireless Pers. Commc'ns LP, No. 8:15-cv-02096–JDW–AEP (M.D. Fla. 2015).  After Mr. Bateman voluntarily dismissed his federal claim, the district court dismissed the action for lack of subject matter jurisdiction.

Mr. Bateman then sued Verizon in state court.  He alleged that Verizon attempted to collect a debt previously discharged in the bankruptcy court, in violation of

the FCCPA, section 559.72(7), (9), and (18), Florida Statutes (2014).[2]  Mr. Bateman

sought to proceed on a class-action basis.  Verizon moved to compel arbitration.  See 9

U.S.C. § 2 (2012); Fla. R. Civ. P. 1.140(b)(1).  The trial court denied Verizon's motion,

citing Seifert v. U.S. Home Corp., 750 So. 2d 633, 639 (Fla. 1999), and Harrier v.

Verizon Wireless Pers. Communications LP (Harrier I), No. 8:12-CV-1588-T-30AEP,

2012 WL 3655355 (M.D. Fla.), reconsideration denied, Harrier v. Verizon Wireless Pers.

Commc'ns LP (Harrier II), 903 F. Supp. 2d 1281 (M.D. Fla. 2012).  The trial court found

that Harrier I was "analogous to this action and particularity persuasive."

Mr. Bateman also filed class claims in the bankruptcy court, seeking to

hold Verizon in contempt for allegedly violating the discharge order.  Verizon

unsuccessfully tried to stay the bankruptcy claims and compel arbitration.  In re

Bateman, 585 B.R. 618, 630 (Bankr. M.D. Fla. 2018).

## II.     Analysis

We review the trial court's order de novo.  See Sherwood v. Slazinski, 162

So. 3d 229, 231 (Fla. 2d DCA 2015).

## A.     Whether the Customer Agreement Survived the Bankruptcy Discharge

Verizon argues that the trial court erroneously relied on Harrier I because

its reasoning that a bankruptcy discharge renders the Customer Agreement—and

related arbitration provision—unenforceable "in the absence of a reaffirmation

---

[2]Subsection (7) prohibits a debt collector from willfully communicating or engaging in conduct that "can reasonably be expected to abuse or harass the debtor." Subsection (9) prohibits a debt collector from "[c]laim[ing], attempt[ing], or threaten[ing] "to enforce a debt when such person knows that the debt is not legitimate, or assert[ing] the existence of some other legal right when such person knows that the right does not exist."  Subsection (18) prohibits a debt collector from knowingly communicating with a debtor that "is represented by an attorney with respect to such debt."

agreement" is inconsistent with bankruptcy law.  <u>See</u> 2012 WL 3655355, at *1.  More specifically, Verizon asserts that, "[c]ontrary to <u>Harrier I</u>'s erroneous reasoning, it is axiomatic that bankruptcy discharges only . . . the debtor's personal liability on a claim for payment . . . , not underlying contracts."  Verizon further argues that the trial court erred by failing to "address the settled concept of severability, under which [Mr.] Bateman's agreement to arbitrate would survive even if his bankruptcy discharge somehow invalidated the Customer Agreement as a whole."

Mr. Bateman maintains that the trial court properly relied on <u>Harrier I</u> because the "better-reasoned and more persuasive weight of authority" holds that "a contractual arbitration provision is enforceable after a bankruptcy only if the contract was reaffirmed in the bankruptcy" pursuant to § 524(c).[3]  Mr. Bateman contends that the concept of severability is not applicable here because "the issue is neither the validity of the underlying contract nor the validity of the arbitration clause it contains."

---

[3]In his brief, Mr. Bateman mentions in passing that several cases have stated that the central purpose of a bankruptcy discharge is to give a debtor a fresh start when holding arbitration agreements unenforceable under the circumstances of the respective cases.  <u>See, e.g.</u>, <u>Anderson v. Credit One Bank, N.A.</u>, 884 F.3d 382, 390 (2d Cir. 2018) (holding that enforcing an arbitration agreement for claims based "on alleged violations of a discharge injunction . . . would interfere with the fresh start bankruptcy promises debtors, which would create an inherent conflict with the Code").  However, Mr. Bateman has failed to develop an argument as to how the "fresh start" principle would make the arbitration provision unenforceable under the facts of this case.  He has mentioned a principle and case law but has failed to apply them.  Additionally, Mr. Bateman did not mention the "fresh start" principle to the trial court.  We need not address it in this opinion.  <u>See</u> <u>Manatee Cty. Sch. Bd. v. NationsRent, Inc.</u>, 989 So. 2d 23, 25 (Fla. 2d DCA 2008) ("[I]t would be inappropriate . . . . to depart from our role as a neutral tribunal and to become an advocate by developing arguments that the [party]— for whatever reason—has chosen not to make.  We work within the framework of the briefs, and it is not our function to rebrief an appeal." (citation omitted)).

Recently, the United States Bankruptcy Court for the Middle District of Florida disagreed with the reasoning in Harrier I, holding that the arbitration provision survived Mr. Bateman's chapter 7 discharge, even though he did not reaffirm his debt with Verizon. In re Bateman, 585 B.R. at 625 n.24.[4] We find In re Bateman highly persuasive.

As the bankruptcy court explained, "the effect of a chapter 7 discharge is simply to relieve the debtor of personal liability" for a debt. Id. at 625 (citing Johnson v. Home State Bank, 501 U.S. 78, 83-84 (1991) (explaining that a chapter 7 discharge "extinguishes only 'the personal liability of the debtor' " and holding that the underlying lien does not disappear with a discharge)); see also 11 U.S.C. § 727(b) (providing that chapter 7 discharge relieves "the debtor from all debts that arose before" the discharge order and "any liability on a claim" that arose before the commencement of the bankruptcy). The court further explained that, contrary to Harrier I's reading of § 524(c), the statute "instructs how to create a valid and enforceable reaffirmation agreement," and "does not speak to the original contract between the debtor and the creditor." In re Bateman, 585 B.R. at 625. "[N]othing in [§] 524 expands the discharge granted under [§] 727" to discharge the entire contract. In re Bateman, 585 B.R. at 625. The single case cited in Harrier I recognized that § 524 applied to the reaffirmation agreement, not the underlying contract. See Jones v. Springfield City Sch. Credit Union, 6 B.R. 336, 338 (Bankr. S.D. Ohio 1980) ("[Section] 524 now establishes parameters for reaffirmation agreements by court approval under very limited circumstances.").

---

[4]In re Bateman issued during the pendency of this appeal but before oral argument. Id. at 618.

Thus, the bankruptcy discharge "does not extinguish the underlying debt" itself. In re Scantling, 465 B.R. 671, 678 (Bankr. M.D. Fla. 2012), aff'd, 754 F.3d 1323 (11th Cir. 2014). The debt still exists and can be collected through other modes of enforcing a claim. See Deutsche Bank Tr. Co. Ams. v. Nash, 136 So. 3d 1267, 1269 (Fla. 2d DCA 2014) (holding that the bankruptcy discharge eliminated personal liability, not in rem liability); see also 11 U.S.C. § 524(e) ("Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.").

Florida courts are in accord. See, e.g., Can Fin., LLC v. Krazmien, 253 So. 3d 8, 11 (Fla. 4th DCA 2018) ("The terms of the note and mortgage remained intact, as a bankruptcy discharge 'extinguishes only the personal liability of the debtor.' " (quoting Johnson, 501 U.S. at 83)). It follows that the discharge does not extinguish an otherwise binding contract underlying the debt. See In re Bateman, 585 B.R. at 625; Williams v. Navient Sols., LLC, 564 B.R. 770, 775 (Bankr. S.D. Fla. 2017) ("[A] discharge entered under § 727 relieves a debtor only of his or her personal obligations on debts that existed on the petition date. The entry of a chapter 7 discharge does not vitiate the effectiveness of an otherwise binding agreement to arbitrate matters relating to a claim that may or may not be subject to the discharge."); cf. Gadomski v. Wells Fargo Bank N.A., 281 F. Supp. 3d 1015, 1019 (E.D. Cal. 2018) ("The Ninth Circuit has stated that a bankruptcy discharge does not mean the whole contract has been merged into the judgment.").

Furthermore, a bankruptcy discharge does not extinguish the arbitration provision in the Customer Agreement because the obligation to arbitrate is not a "debt"

or "claim" as defined by the Bankruptcy Code.  See 11 U.S.C. § 101(5), (12).  It is not a right to payment or a right to an equitable remedy for breach of performance.  See Mann v. Equifax Info. Servs., LLC, No. 12-CV-14097, 2013 WL 3814257, at *8 n.4 (E.D. Mich. July 22, 2013) ("An arbitration agreement, however, is not a 'claim to payment,' but rather merely defines the venue in which a claim to payment is to be resolved.").  An arbitration agreement merely defines the venue where the parties will resolve a claim to payment or equitable remedy.  Id.  Consequently, Mr. Bateman's reliance on Jernstad v. Green Tree Servicing, LLC, No. 11 C 7974, 2012 WL 8169889, at *2 (N.D. Ill. Aug. 2, 2012), is unpersuasive.  See Mann, 2013 WL 3814257, at *8 n.4 (finding Jernstad unpersuasive where the court concluded that the "discharge rendered the parties' Arbitration Agreement unenforceable," and then immediately stated, "What is discharged is a claim to payment" (quoting Jernstad, 2012 WL 8169889, at *6)).

Accordingly, we conclude that the Customer Agreement and its arbitration provision survived Mr. Bateman's bankruptcy discharge.  See In re Bateman, 585 B.R. at 625; Williams, 564 B.R. at 775; cf. Can Fin., LLC, 2018 WL 3654832, at *2.  The absence of a reaffirmation agreement does not change this conclusion.  See In re Bateman, 585 B.R. at 625.

Besides, even if the bankruptcy discharge rendered the Customer Agreement unenforceable, "the arbitration provision [was] severable and survive[d]." See id.  ("[A]s a matter of substantive federal arbitration law, . . . an arbitration provision is severable from the remainder of the contract" (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006), for the proposition that "as a matter of

substantive federal arbitration law, . . . an arbitration provision is severable from the remainder of the contract")). We reject Mr. Bateman's argument to the contrary.

**B.      Whether Mr. Bateman's FCCPA Claims Are Arbitrable**

Claiming the strong presumption in favor of arbitration, see Morton v. Polivchak, 931 So. 2d 935, 941 (Fla. 2d DCA 2006), Verizon maintains that Mr. Bateman's claims are within the scope of the broad arbitration provision because the Customer Agreement is the "sole source" of the parties' relationship and "the claims arise directly from Verizon's alleged efforts to enforce its rights under the Customer Agreement." In contrast, Mr. Bateman contends that his claims arise from a state consumer protection statute, the FCCPA. He argues that his claims do not arise from the Customer Agreement because the bankruptcy court discharged the debt; Mr. Bateman owed nothing under the Customer Agreement.

Florida contract law guides our resolution of whether Mr. Bateman must arbitrate.[5] See Parnell v. CashCall, Inc., 804 F.3d 1142, 1147 (11th Cir. 2015) ("When federal courts interpret arbitration agreements, state contract law governs and directs the courts' analyses of whether the parties committed an issue to arbitration."). The Florida Supreme Court explained that even with a general policy favoring arbitration, a dispute is within the scope of a "broad" arbitration provision—a provision demanding arbitration of any claim arising out of or relating to the underlying contract—only if there

_____

[5]Verizon suggested in its motion to compel arbitration that Georgia law applies. However, because neither party argues the applicability of Georgia law and both parties discuss Florida cases, we apply Florida law. See Marine Envtl. Partners, Inc. v. Johnson, 863 So. 2d 423, 426 (Fla. 4th DCA 2003) (applying Florida law where "neither party . . . argued the applicability of Colorado law," and both parties "relied heavily on Florida law as controlling").

is a significant relationship between the dispute and the contract.  Seifert, 750 So. 2d at 638.  After all, "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate."  Id. at 636.

A significant relationship does not arise "simply because the dispute would not have arisen absent the existence of a contract between the parties."  Id. at 639.  Rather, we look for a "contractual nexus" between the dispute and the contract.  See id. at 638-39.  "A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract."  Jackson v. Shakespeare Found., Inc., 108 So. 3d 587, 593 (Fla. 2013) (citing Seifert, 750 So. 2d at 638).

In Seifert, the court held that a contractual nexus did not exist because the wrongful death claims, there, were founded "upon a tort theory of common law negligence unrelated to" any unique rights and obligations imposed under the contract.  750 So. 2d at 640-42.  The court further noted that the factual allegations in the complaint did not rely on the parties' contract, and thus, the "allegations rel[ied] on obligations that would extend to anyone, third parties as well as the Seiferts, who might be injured by U.S. Home's tortious conduct."  Id. at 641-42.

Mr. Bateman argues that similar to the tort claims in Seifert, the statutory claims he asserts do not require reference to or construction of the Customer Agreement.  He correctly asserts that his statutory claims rely on obligations that arise under the FCCPA and that he "could have brought this action based on [Verizon's] conduct regardless of whether the Customer Agreement ever existed."

- 10 -

Mr. Bateman does not allege that Verizon's conduct violated the Customer Agreement, nor does he base his claims on the terms of the Customer Agreement. Cf. In re Bateman, 585 B.R. at 627-28 (stating that "Verizon misses the mark when describing the nature of the Motion for Contempt" because Mr. Bateman argued that Verizon violated the discharge order, not that "the debt collection letter from Verizon's agent violated the Customer Agreement"). Instead, Mr. Bateman alleges that Verizon violated the FCCPA. This statute imposes legal duties on consumer debt collectors.[6] § 559.72; Morgan v. Wilkins, 74 So. 3d 179, 181 (Fla. 1st DCA 2011). These legal duties arise upon a debt collector's communication to collect debt and do not require a contract. Cf. Desmond v. Accounts Receivable Mgmt., Inc., 72 So. 3d 179, 181 (Fla. 2d

---

[6]Section 559.55(6) defines "debt collector" as

> any person who uses any instrumentality of commerce within this state, whether initiated from within or outside this state, in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. The term "debt collector" includes any creditor who, in the process of collecting her or his own debts, uses any name other than her or his own which would indicate that a third person is collecting or attempting to collect such debts.

Unlike the FDCPA, "the FCCPA applies not only to debt collectors but also to any 'person.' " Gann v. BAC Home Loans Servicing LP, 145 So. 3d 906, 910 (Fla. 2d DCA 2014); see also § 559.72 (providing that "[i]n collecting consumer debts, no person shall . . .") (emphasis added); Morgan v. Wilkins, 74 So. 3d 179, 181 (Fla. 1st DCA 2011) (noting the appellees' concession that the trial court was in error when it ruled that FCCPA pertains only to debt collectors" in a case where a former client allegedly owed a debt to a law firm); Kelliher v. Target Nat'l Bank, 826 F. Supp. 2d 1324, 1327 (M.D. Fla. 2011) ("Although the federal FDCPA does not apply to original creditors, the FCCPA has been interpreted to apply to original creditors as well as debt collection agencies."). The parties have not asked us to weigh in on whether Verizon is a debt collector under the FCCPA.

DCA 2011) (holding that FCCPA applied where ARM attempted to collect debt from the wrong person because FCCPA applies to "not only an actual debtor, but also 'any natural person . . . allegedly obligated to pay any debt.' " (quoting § 559.55(2))); McCaskill v. Navient Sols., Inc., 178 F. Supp. 3d 1281, 1297 (M.D. Fla. 2016) ("[W]hen a creditor calls the wrong number and mistakenly alleges that the plaintiff owes a debt, the plaintiff is a 'debtor' under the FCCPA."). Accordingly, the alleged statutory violations addressed under section 559.72 arose from Verizon's collection efforts and were not unique to the Customer Agreement. Cf. Five Points Health Care Ltd. v. Alberts, 867 So. 2d 520, 521 (Fla. 1st DCA 2004) (reasoning that its conclusion the statutory claims were within the scope of arbitration was consistent with Seifert where "[t]he statutory duties . . . arose because of Mr. Alberts' admission to Park Ridge Nursing Center pursuant to the Agreement for Care").

Further, Mr. Bateman's FCCPA claims do not require reference to or construction of the Customer Agreement. Verizon claims a significant relationship between the Customer Agreement and its alleged conduct because Mr. Bateman alleged in his complaint that the underlying debt arose from a "transaction" for cell phone services.[7] We are not moved. Mr. Bateman's allegations do not explicitly

_____

[7]At oral argument, Verizon argued for the first time that the Customer Agreement is required to resolve the dispute based on Mr. Bateman's allegations pertaining to class certification and the limitation of liability provision in the Customer Agreement. Because Verizon failed to present these arguments pertaining to these allegations in its briefs, we do not address them. See Bainter v. League of Women Voters of Fla., 150 So. 3d 1115, 1126 (Fla. 2014) (" 'Basic principles of due process'—to say nothing of professionalism and a long appellate tradition—'suggest that courts should not consider issues raised for the first time at oral argument' and 'ought not consider arguments outside the scope of the briefing process.' " (quoting Powell v. State, 120 So. 3d 577, 591 (Fla. 1st DCA 2013))); cf. Morton, 931 So. 2d at 941 (declining to address other provisions in an arbitration agreement where the parties did

mention the Customer Agreement, and the reference to the transaction simply notes that there was an underlying debt before the bankruptcy discharge.  See Mims v. Glob. Credit & Collection Corp., 803 F. Supp. 2d 1349, 1358 (S.D. Fla. 2011) (stating that the claims were not intertwined with the Agreement where "the claims presume[ed] the existence of the Agreement . . . purely for the purpose of noting there [was] an underlying debt").

It may be true that the debt would not have accrued but for the Customer Agreement and that the dispute may not have resulted but for the Customer Agreement, but Seifert rejected such analysis.  See 750 So. 2d at 638 ("[T]he mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement."); see also Saunders v. St. Cloud 192 Pet Doc Hosp., LLC, 224 So. 3d 336, 338 (Fla. 5th DCA 2017) (rejecting similar logic).  Again, to compel arbitration under a broad arbitration provision, the claim "must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself."  Seifert, 750 So. 2d at 638.  The dispute in this case is whether Verizon violated the FCCPA.  Verizon fails to explain adequately how the Customer Agreement is required to resolve this dispute.

Without a disputed issue that requires reference to or construction of the Customer Agreement, the FCCPA claims lack a significant relationship to the Customer Agreement and are not arbitrable.  See id.  Compare In re Bateman, 585 B.R. at 627-28

---

not present any "argument concerning the bearing these provisions might have on the issue of whether the parties" agreed to arbitrate the punitive damages claims).

- 13 -

(holding that "[t]he lack of a nexus [was] apparent" between the Customer Agreement and the issue of contempt where Mr. Bateman did "not argue that the debt collection letter from Verizon's agent violated the Customer Agreement" and the Customer Agreement was not needed to resolve the issue of contempt), with Aztec Med. Servs., Inc. v. Burger, 792 So. 2d 617, 624 (Fla. 4th DCA 2001) (holding that the statutory claims were within the scope of arbitration "where (1) appellees pled identical allegations to support both their breach of contract and statutory claims and (2) reliance on the agreement and its terms [was] necessary to determine whether or not the claims submitted by the physicians to Aztec were paid timely and whether Aztec improperly coded the claims submitted-the factual allegations at the core of the Unfair Trade Practices Act claim").

We are not persuaded by the federal cases upon which Verizon relies. Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir. 2008), is inapposite because the parties in Sherer did not challenge "that the claims would otherwise be within the scope of the arbitration clause '[h]ad the defendant signed the contract.' " (Alteration in original.) Instead, the sole issue in Sherer was "whether Sherer ha[d] agreed to arbitration with a nonsignatory, such as Green Tree." Id. Some of the other federal cases relied on by Verizon did not involve claims pertaining to a discharged debt and concluded that the debt collection claims arose under the broad arbitration agreements without delving into whether a significant relationship existed between the agreements and the claims. See Wilder v. Midland Credit Mgmt., No. CIVA109CV2039JOFAJB, 2010 WL 2499701, at *4 (N.D. Ga. May 20, 2010), report and recommendation adopted, No. CIVA109CV02039JOFAJB, 2010 WL 2499659 (N.D. Ga.

- 14 -

June 15, 2010); Miller v. Nw. Tr. Servs., Inc., No. CV-05-5043-RHW, 2005 WL 1711131, at *4 (E.D. Wash. July 20, 2005).

In the federal cases where the courts provided a more in-depth analysis of the scope of the arbitration provision, the plaintiffs in those cases raised issues for which resolution required reference to the contracts. See Koch v. Compucredit Corp., 543 F.3d 460, 466 (8th Cir. 2008); Campbell v. Verizon Wireless, LLC, No. CIV.A. 14-0517-WS-N, 2015 WL 416484, at *5 n.13 (S.D. Ala. Jan. 29, 2015). In Koch, "the heart of the dispute—the occurrence and alleged payment of the debt—[was] one founded in the credit agreement." 543 F.3d at 466. In Campbell, the February 2008 and May 2010 Customer Agreements "included detailed recitations of Verizon's billing practices and obligations," and the dispute "occurred as a fairly direct result of the manner and methods by which Verizon charged [Mr. Campbell] for services and referred his account to collection." 2015 WL 416484, at *5 n.13. Mr. Campbell also disputed that he ever signed the service agreement, under which the debt at issue incurred. Id. at *1. Unlike the parties in Koch and Campbell, Verizon and Mr. Bateman do not dispute whether Mr. Bateman paid the debt or signed the Customer Agreement. If anything, they dispute whether the debt was discharged, which is a dispute founded in the bankruptcy proceedings.

Additionally, Verizon does not indicate if the July 2011 or February 2012 Customer Agreements included detailed recitations of Verizon's billing practices and obligations relevant to this dispute, like the agreements in Campbell. Our independent review of the record indicates that the Customer Agreements do not include detailed recitations of Verizon's billing practices or obligations when a debt is discharged in

- 15 -

bankruptcy. The only mention of collections in the Customer Agreements is in the "About My Payments" section and states that Verizon may charge the customer any fees the collection agency charges them if the customer fails to pay and Verizon uses a collection agency and caps the amount of collection fees at 18%. And the only mention of bankruptcy is in the "What Are Verizon Wireless' Rights to Limit or End Service or End This Agreement?" section, which states that Verizon may suspend or terminate the service if the customer goes bankrupt. This statement has no bearing on the allegations in Mr. Bateman's complaint as Mr. Bateman had ended his service with Verizon well before he ever filed for bankruptcy.

We conclude, based on the arguments and record before us, that Mr. Bateman's claims do not have a "significant relationship" to the Customer Agreement. Cf. Bray v. PNC Bank, N.A., 196 F. Supp. 3d 1282, 1287 (M.D. Fla. 2016) ("Plaintiffs' claims in this case arise out of Defendant's attempts to enforce a debt that was discharged in bankruptcy, as opposed to arising directly from the Mortgage. Thus, Plaintiffs' claims do not arise out of and are not sufficiently related to the Mortgage to fall within the jury waiver provision."). We emphasize that the policy favoring arbitration does not change our conclusion because the "significant relationship" requirement laid out in Seifert must be satisfied even in light of the general policy favoring arbitration. See Seifert, 750 So. 2d at 638; see also Wilder, 2010 WL 2499701, at *4 ("Although federal policy favors arbitration, . . . a district court must compel arbitration only if the parties have agreed to arbitrate their dispute; 'parties cannot be forced to submit to arbitration if they have not agreed to do so.' " (quoting Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 F. App'x. 782, 785 (11th Cir. 2008))).

### III.     Conclusion

The trial court erred in denying the motion to compel arbitration by applying Harrier I's flawed reasoning.  As we explained above, the bankruptcy order discharged Mr. Bateman's personal liability as to his debts, not the entire Customer Agreement and arbitration provision therein.  See In re Bateman, 585 B.R. at 625; Williams, 564 B.R. at 775.  The arbitration provision remained valid even in the absence of a reaffirmation agreement.  See In re Bateman, 585 B.R. at 625.  Nevertheless, bound as we are by Seifert, we affirm the trial court's denial of Verizon's motion to compel arbitration because Mr. Bateman's FCCPA claims do not have a significant relationship to the Customer Agreement.

Affirmed.


SLEET and SALARIO, JJ., Concur.