SUPERIOR COURT 
 
 TOMMY ROYAL AND BERNADETTE COSTA, INDIVIDUALLY AND ON BEHALF OF SIMILARLY SITUATED INDIVIDUALS v. JUDGMENT ACQUISITIONS UNLIMITED INC. (D/B/A JUDGMENT ACQUISITIONS UNLIMITED) AND MICHAEL ZOLA

 
 Docket:
 2384CV02302-BLS2
 
 
 Dates:
 May 24, 2024
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER DENYING MOTION BY JUDGMENT ACQUISITIONS UNLIMITED TO COMPEL ARBITRATION
 
 

 Judgment Acquisitions Unlimited (“JAU”) is a Massachusetts-based debt collector. Tommy Royal and Bernadette Costa claim that JAU and its attorney Michael Zola have engaged in unfair debt collection practices in violation of Massachusetts law, in connection with credit card debts allegedly owed by Royal and Costa. They seek to represent a proposed class of people who were sued by JAU in a small claims session and meet certain other criteria.
JAU has moved to compel arbitration of the claims against it by Royal and Costa.[1] The Court will deny this motion because JAU has not met its “burden of proving that the material facts are established and that it is entitled to arbitration as a matter of law.” Barrow v. Dartmouth House Nursing Home, Inc., 86 Mass. App. Ct. 128, 131 (2014).
JAU has not shown a valid chain of assignment of Royal’s and Costa’s accounts and alleged arbitration agreements from their original creditors all the way to JAU. As a result, JAU has not shown that it has any right to enforce the alleged arbitration agreements between these plaintiffs and a credit card issuer.
In any case, the alleged arbitration agreements upon which JAU relies would not be implicated here because Plaintiffs’ claims of unlawful debt collection practices do not arise under or relate to the contracts between the Plaintiffs and their original creditor.
1. No Choice-of-Law Issue. JAU says that the alleged arbitration agreements provide that they are governed by Federal law and, to the extent not preempted, by Missouri law. It does not contend, however, that Missouri law differs in any material way from Massachusetts  law with respect to the issues
 
--------------------------------------------
 
[1]        Zola did not join in this motion. He answered the complaint in February 2024.
 
                                                            -1-
 
before the Court. In their opposition memorandum, Plaintiffs say that “Missouri and Massachusetts law align on all relevant questions.” JAU did not disagree in its reply memorandum or at oral argument.
It appears that the issues the Court must address to decide this motion to compel are all governed by the Federal Arbitration Act, rather than by State law. But since no party contends that Missouri and Massachusetts law differ substantively, it does not matter which the Court applies if Federal law were not dispositive.
The Court may therefore apply Federal and Massachusetts law in deciding JAU’s motion to compel arbitration, without resolving any choice-of-law issue. “Only actual conflicts between the laws of different jurisdictions must be resolved.” UBS Financial Services, Inc. v. Aliberti, 483 Mass. 396, 405 n.12 (2019), quoting Kaufman v. Richmond, 442 Mass. 1010, 1012 (2004) (rescript). “Choice of law analysis is unnecessary when that choice will not affect the outcome of the case.” Kaufman, supra.
2. Existence of Enforceable Arbitration Agreement. It is up to the Court to determine whether JAU received a valid assignment of arbitration rights under Royal’s and Costa’s credit card accounts. The Court finds that JAU has not met its burden of proving that any arbitration provision in a credit card agreement with Royal or Costa was validly assigned to JAU.
2.1. Question for the Court. “Arbitration is a matter of contract and consent,” and the Supreme Court has “long held that disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes.” Coinbase, Inc. v. Suski, U.S. Sup. Ct. No. 23-3, slip op. at 1, 2024 WL 233424, at *2 (U.S. May 23, 2024). “[A] party who has not agreed to arbitrate will normally have a right to the court’s decision about the merits of its dispute.” Id. slip op. at 5, 2024 WL 233424, at *4, quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995).[2]
“ ’[B]efore referring a dispute to an arbitrator,’ therefore, ‘the court determines whether a valid arbitration agreement exists.’ ” Id., quoting Henry Schein, Inc. v. Archer and White Sales, Inc., 586 U.S. 63, 69 (2019). The JAU, as the party seeking to compel arbitration, bears the burden of proving “the existence of a
--------------------------------------------
 
[2]        The Coinbase slip opinion is available at https://www.supremecourt.gov/opinions/23pdf/23-3_879d.pdf (last visited May 24, 2024).
 
                                                                        -2-
 
binding agreement to arbitrate.” Air-Con, Inc. v. Daikin Applied Latin America, LLC, 21 F.4th 168, 176 (1st Cir. 2021).
It follows that where a debt collector seeks to compel arbitration regarding an account that it acquired from someone else, based on an alleged arbitration agreement between the debtor and the original creditor, the debt collector must “prove a valid chain of assignment,” meaning “a valid assignment every time the right to compel arbitration was purportedly transferred.” Gemini Capital Group, LLC v. Tripp, 445 S.W.3d 583, 588 (Mo. Ct. App. 2013); accord Blue Water Bay at Center Hill, LLC v. Hasty, 2017 WL 5665410, at *6 (Tenn. Ct. App. Nov. 27, 2017); Yates v. CACV of Colorado, LLC, 693 S.E.2d 629, 635 (Ga. Ct. App. 2010); see also Barbosa v. Midland Credit Management, Inc., 981 F.3d 82, 90 (1st Cir. 2020) (where debt collection company proved that credit card issuer had assigned to it all rights to and under debtor’s account, collector as assignee stood in shoes of issuer as assignor and could enforce arbitration agreement).
And it similarly follows that this gateway issue must be resolved by the court, not an arbitrator. Koch v. Compucredit Corp., 543 F.3d 460 (8th Cir. 2008) (validity of assignment of underlying credit card account, as relevant to whether alleged assignee could enforce arbitration provision in credit card agreement, was “reserved for the court under the FAA”); see generally Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (“a gateway dispute about whether the parties are bound by a given arbitration clause raises a ‘question of arbitrability’ for a court to decide”).
2.2. Failure of Proof. The Court will assume, without deciding, that: (a) when Royal obtained a credit card through The Bank of Missouri he was provided with and accepted the account agreement in JAU’s exhibit A; (b) when Costa obtained a credit card through The Bank of Missouri she was provided with and accepted the account agreement in JAU’s exhibit B; (c) the documents in JAU’s exhibit C are authentic copies of certain legal assignment documents that relate to JAU’s acquisition of all right, title, and interest in Costa’s account; and (d) the documents in JAU’s exhibit D are authentic copies of certain legal assignment documents that relate to JAU’s acquisition of all right, title, and interest in Royal’s account.
The Court need not resolve whether JAU has presented competent evidence to authenticate these documents, because the documents would not establish a valid chain of assignment even assuming they are all authentic.
 
                                                            -3-
 
2.2.1. Royal’s Account. If exhibit A is a copy of Royal’s “Genesis Credit® Account Agreement,” it suggests that The Bank of Missouri issued Royal a credit card, and that Royal’s contractual relationship regarding that account was with an entity called “Genesis FS Card Services.”[3] This agreement includes an arbitration provision.
JAU has not established a valid chain of assignment of Royal’s alleged arbitration agreement to JAU.
First, JAU has failed to prove that Genesis FS ever assigned rights under Royal’s account. JAU has presented Bills of Sale with closing dates of June 30, 2020, that seem to show that Genesis FS Card Services sold, assigned, and transferred “all right, title and interest” in and to certain accounts to Brightwater Investments One, LLC. But JAU has not shown that Royal’s account was among those sold and assigned to Brightwater. These Bills of Sale refer to four text files that identified each of the accounts sold and assigned to Bridgewater. However, JAU presents no evidence that Royal’s account was listed in any of those files.[4]
Nor has JAU proved that Brightwater assigned any rights under Royal’s account. Although JAU has presented an Assignment and Bill of Sale dated March 3, 2022, from Bridgewater to BW 34 LLC, it presents no evidence that it involved Royal’s account. This document says that Bridgewater was selling and assigning all of its rights, title, and interest in each account described in a separate Agreement with BW 34. But JAU has not produced that Agreement.
 
--------------------------------------------
 
[3]   It appears that Genesis Financial Solutions rebranded itself as Concora Credit in September 2023. See https://about.concoracredit.com/article/concora-credit (last visited May 24, 2024). The company describes itself as “a service provider for banks focusing on helping non-prime consumers gain access to credit.” See
 https://about.concoracredit.com/who-we-help (last visited May 24, 2024). The Court mentions these background facts for context. It did not rely on them in any way in deciding JAU’s motion to compel arbitration.
[4] This Bill of Sale states that it was delivered pursuant to a Receivable Sales Agreement dated July 23, 2019. And Royal has shown that JAU, according to its original Statement of Small Claim in the Dorchester BMC (complaint ex. C), is seeking to collect under a consumer credit agreement that Royal did not enter into until September 12, 2019. But if the closing under this Bill of Sale did not happen until June 30, 2020, it is possible that Royal’s account could have been included, even though it was not opened until after the Receivable Sales Agreement was executed.
 
                                                            -4-
 
Similarly, JAU has not shown that BW 34 ever assigned any rights under Royal’s account. It has provided a further Assignment and Bill of Sale also dated March 3, 2022, from BW 34 to Islandwide Consulting Group. This document says that it is carrying out the sale and assignment of all rights, title, and interest in each account described in a separate Agreement with Islandwide. But JAU has not produced that Agreement either.
Finally, JAU has produced a Purchase and Sale Agreement pursuant to which Islandwide sold and assigned to JAU all of its right, title, and interest in and to some unspecified accounts. This P&S provided that, once it received payment from JAU, Islandwide would deliver a file or files “containing a detailed listing of the Accounts to be sold.” JAU has provided a separate document titled Assignment and Bill of Sale stating that Islandwide sold and assigned to JAU its rights to a particular account of Tommy Royal. But it provides no evidence that this account was the same one that Royal originally opened through The Bank of Missouri, or that there is a valid chain of title assigning the account and associated arbitration rights through intermediaries to JAU.
2.2.2. Costa’s Account. The documentation that JAU contends relates to the assignment of Costa’s account suffers from all of the same defects, plus two more.
The “Genesis Credit® Account Agreement” that JAU says was provided to Costa similarly suggests that she had an original contractual relationship with “Genesis FS Card Services.”
But JAU has not provided any evidence that Genesis FS Card Services ever assigned its rights under Costa’s account to anyone else. According to JAU, the original assignment in the purported chain of assignments concerning Costa was made by a different entity called Genesis Bankcard Services, Inc. Since JAU has not shown that Genesis Bankcard Services ever entered into an account agreement with Costa, the alleged chain of assignments starting with the entity is irrelevant and cannot establish that any rights under Costa’s arbitration agreement were ever validly assigned to JAU.
Furthermore, the Bill of Sale and assignment by Genesis Bankcard Services says that this transaction closed on December 28, 2017. But, according to the Statement of Small Claim that JAU filed against Costa in the Somerville District Court (complaint ex. D), JAU is seeking to recover under a consumer lease agreement that Costa entered into on August 3, 2018. Any rights of the credit
 
                                                            -5-
 
card issuer under Costa’s 2018 account agreement could not possibly have been assigned as part of a transaction that closed eight months earlier.
The rest of the chain of assignments that JAU contends relates to Costa’s account agreement suffers from the same failures of proof discussed above with respect to Royal.
2.3. No Right to Discovery. In its reply memorandum, JAU for the first time seeks leave to conduct discovery on its own chain of title before the Court decided JAU’s motion to compel arbitration. This request makes no sense. The Court will exercise its discretion not to delay resolution of this motion pending some unexplained course of discovery.
There is no point in JAU asking Royal or Costa anything about any assignments of their credit card accounts and agreements. There is no reason why they would know anything about that. And JAU does not suggest that they would have any discoverable information that could conceivably be relevant.
There is also no point in JAU seeking to conduct third-party discovery any of the entities that purportedly were part of a chain of assignment of rights under Royal’s and Costa’s original credit card accounts and agreements. JAU agreed, in § 4.6 of its P&S Agreement with Islandwide, that “under no circumstances” will JAU ever “be permitted to contact” either the original owner or any other prior holders of accounts purportedly assigned by Islandwide to JAU, “without first obtaining [Islandwide’s] express written consent.” JAU does not represent and has not shown that it obtained, or even sought, such consent.
In any case, JAU should have obtained and been able to document a valid chain of title before it began debt collection efforts against Royal and Costa, and before it moved to compel arbitration under agreements that JAU claims were assigned to it. JAU’s apparent failure to do so is a problem of its own making.
Finally, discovery would be a waste of time because JAU would not be entitled to compel arbitration even if it could establish a valid chain of assignment, as discussed below.
3. Scope of Alleged Arbitration Agreements. The motion to compel arbitration would fail even assuming that the arbitration agreements presented by JAU had validly been assigned to JAU, because the claims by Royal and Costa that JAU has engaged in unlawful debt collection practices falls outside the scope of the purported arbitration provisions.
 
                                                            -6-
 
3.1. Question for the Court. Whether the purported arbitration provisions are implicated here is a question for the court decided, not something that Royal or Costa agreed to refer to arbitration.
The threshold issue of whether a contract requires the parties to arbitrate a particular dispute “is ordinarily for a court to decide, and courts will not defer that issue to arbitration absent ‘clear and unmistakable evidence’ that the parties agreed to do so.” Merrimack College v. KPMG LLP, 88 Mass. App. Ct. 803, 808, rev. denied, 473 Mass. 1112 (2016) (cleaned up), quoting First Options, 514 U.S. at 944.
The contracts presented by JAU both provide that “[a]ny dispute regarding whether a particular controversy is subject to arbitration … will be decided by a court and not by an arbitrator.” This provision means what it says.
3.2. No Duty to Arbitrate over Debt Collection Practices. By its express terms, the arbitration provision in the account agreements presented by JAU would, if applicable, only require Royal and Costa to arbitrate disputes or claims that arise out of or are related to their account, their account agreement or any other agreement related to their account, any breach of their agreement or other related agreement, or any relationship resulting from the agreement, any insurance or other service related to their account.
The claims by Royal and Costa do not fall within any of these categories. They claim that JAU has engaged in unfair and deceptive practice by improperly claiming in small claims actions that alleged credit card debtors owe amounts as “principal” that in realty include substantial amounts of alleged pre- judgment interest, and by trying to collect and in some cases actually collecting amounts of prejudgment interest that were not in fact owed.
The claims that JAU has engaged in these unlawful debt collection practices are not subject to Royal’s or Costa’s alleged arbitration agreement because those claims do not concern their accounts, their account agreements, or anything else covered by the arbitration provision. See Landry v. Transworld Systems, Inc., 485 Mass. 334, 341–342 (2020) (claim that defendant engaged in unlawful debt collection practices not covered by provision requiring arbitration of disputes arising out of or relating to car rental agreement); Calderon v. Sixt Rent a Car, LLC, 5 F.4th 1204, (11th Cir. 2021) (claim that car rental agency violated state consumer protection laws fell outside scope of arbitration provision that customer had entered into with online travel booking company, as it did not
 
                                                            -7-
 
relate to any services or products provided by the online booker ); Verizon Wireless Personal Communications, LP v. Bateman, 264 So.3d 345, 351–355 (Fla. Ct. App. 2019) (claim that cell phone service provider violated state debt collection statute not covered by provision requiring arbitration of disputes relating to or arising out of account agreement or services provided).
ORDER
The motion by Judgment Acquisitions Unlimited (“JAU”) to compel arbitration is denied. JAU shall file its answer or serve some other response to the complaint by June 14, 2024. An initial Rule 16 scheduling conference will be held on July 2, 2024, at 2:00 p.m.