# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1948

_____

| | | |
|---|---|---|
| Mary Koch, on behalf of herself and all others similarly situated, | * * * | |
| Plaintiff/Appellee, | * * | |
| v. | * * * | Appeal from the United States District Court for the Eastern District of Arkansas. |
| Compucredit Corporation; Jefferson Capital Systems, LLC, | * * * | |
| Defendants/Appellants, | * * | |
| J.A. Cambece Law Office, P.C., | * * | |
| Defendant. | * | |

_____

Submitted: January 16, 2008
Filed: September 23, 2008

_____

Before COLLOTON, SHEPHERD, Circuit Judges, and ERICKSON,[1] District Judge.

_____

COLLOTON, Circuit Judge.

Mary Koch filed suit on behalf of herself and a putative class, alleging that Compucredit Corp., Jefferson Capital Systems, LLC, and the J.A. Cambece Law

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota, sitting by designation.

Office, P.C., violated the Fair Debt Collection Practices Act (FDCPA) and the Arkansas Deceptive Trade Practices Act (ADTPA) by attempting to collect on a debt that Koch already had paid. The defendants, purported assignees of the original creditor First North American National Bank (FNANB), moved to compel arbitration under the arbitration clause contained in the credit card agreement between FNANB and Koch. The district court denied the motion, reasoning that the assignment of the credit agreement from FNANB to the defendants was invalid, and that the defendants thus did not have an agreement to arbitrate with Koch. The defendants filed this interlocutory appeal, and we reverse.

## I.

In 2000, Koch entered into a credit card agreement with FNANB. Koch admits that she incurred debt from using the card, but alleges that she settled the debt in January 2003. On August 31, 2005, FNANB assigned "all rights, title, and interest" in Koch's account to Jefferson Capital. At the time of the assignment, FNANB's records presumably indicated that Koch was past due on her account, as Jefferson Capital hired the J.A. Cambece Law Office, P.C. (Cambece), to collect on the debt. Cambece sent Koch a collection notice on December 9, 2005, claiming that she owed $284.68 to Jefferson Capital as the assignee of FNANB.

Koch attempted to resolve the matter with Cambece, but the firm continued its collection efforts, allegedly making various misrepresentations in the process. Koch ultimately filed suit against Cambece, Jefferson Capital, and its corporate parent, Compucredit, claiming that the defendants had violated the FDCPA and the ADTPA. The defendants moved to stay the proceedings and compel arbitration, invoking the arbitration clause contained in the credit agreement between FNANB and Koch. Koch opposed this motion on the grounds that (1) the arbitration clause was invalid because it was unconscionable, and (2) her claims did not fall within the scope of the arbitration clause.

-2-

The district court agreed with Koch that the arbitration clause could not be invoked by the defendants, albeit for different reasons. The court focused on the purported assignment of Koch's account, accepting as true Koch's allegation that she settled her debt with FNANB in 2003. The court reasoned that absent an existing debt, FNANB had no remaining interest in Koch's account, and therefore had nothing to assign. Because the absence of a "present interest" rendered the assignment invalid under Arkansas law, the court concluded that Jefferson Capital could not be treated as a party to the credit agreement or to the arbitration clause contained therein. The court thus denied Jefferson Capital's motion to compel, relying on the rule that a party cannot compel arbitration without a valid arbitration agreement. Jefferson Capital and Compucredit appealed. We will refer to the appellants as "Jefferson Capital" for purposes of simplicity.

II.

The Federal Arbitration Act (FAA), 9 U.S.C. § 4, provides that a party aggrieved by the failure of another party to arbitrate under a written agreement may petition the district court for an order compelling arbitration. The purpose of the FAA is "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). To effectuate that goal, Congress provided a limited role for courts, allowing them to "consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). These issues are presumptively committed to judicial determination, because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

To decide questions of arbitrability, we must determine whether a valid arbitration agreement exists between the parties and, if so, whether the subject matter

of the dispute falls within the scope of the arbitration clause. *United Steelworkers, Local No. 164 v. Titan Tire Corp.*, 204 F.3d 858, 860 (8th Cir. 2000). The district court concluded that there was no valid arbitration agreement between Jefferson Capital and Koch, because FNANB's assignment to Jefferson Capital was invalid. Because the district court's decision was based on the complaint alone, and did not involve any determination of disputed factual issues, we review this decision *de novo*, accepting as true the allegations in the complaint. *See Suburban Leisure v. AMF Bowling Prods.*, 468 F.3d 523, 525 (8th Cir. 2006).

At the outset, Jefferson Capital argues that the district court erred by considering the validity of the assignment at all, because that issue should be decided by the arbitrator. This position is in tension with our precedent in *I.S. Joseph Co., Inc. v. Mich. Sugar Co.*, 803 F.2d 396 (8th Cir. 1986), where we held, in the context of a dispute between an assignee and an original contracting party, that "the enforceability of an arbitration clause is a question for the court when one party denies the existence of a contract with the other." *Id*. at 400. We observed that "absent some indication in the original agreement that the parties at that time provided for assignment of their interests under the agreement or otherwise intended to bind themselves to entities not then in existence, the validity of the assignment must be determined under the common law of contract." *Id*. Under those circumstances, referral of the assignment question to the arbitrator "would require the arbitrator to look outside the agreement to the circumstances of the contract itself and the contract law of the state in order to determine his jurisdiction in the matter." *Id*. That function, we said, is one reserved for the court under the FAA. *Accord American Safety Equipment Corp. v. J.P. Maguire & Co.*, 391 F.2d 821, 829 (2d Cir. 1968).

Jefferson Capital contends that *I.S. Joseph* and similar decisions do not preclude referral of the assignment dispute to the arbitrator in light of *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). The appellants note that *Buckeye* reiterated a rule of "severability," established by *Prima Paint*, that an arbitration clause is

severable from the remainder of a contract. *Prima Paint* addressed a claim of fraud in the inducement, and held that "if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the making of the agreement to arbitrate – the federal court may proceed to adjudicate it." *Prima Paint*, 388 U.S. at 403-04. But where the claim was one of fraud in the inducement of the contract generally, *Prima Paint* declared that the issue was for the arbitrator. *Id*. *Buckeye*, applying *Prima Paint*, reiterated that "unless the challenge is to the arbitration clause itself, the issue of *the contract's validity* is considered by the arbitrator in the first instance." 546 U.S. at 445-46 (emphasis added). Jefferson Capital urges that the validity of the assignment here depends on the continuing validity of the contract as a whole, not just the arbitration clause, so the dispute should be referred to the arbitrator.

In *Buckeye*, the plaintiffs claimed that the defendant's check cashing agreement "violated various Florida lending and consumer protection laws," and was therefore void and illegal *ab initio*. *Id.* at 443. The Supreme Court held that because the plaintiffs challenged "the agreement, but not specifically its arbitration provisions," the rule of severability applied, and the arbitration provisions were enforceable "apart from the remainder of the contract." *Id.* at 446. The Court specified, however, that "[t]he issue of the *contract's validity* is different from the issue whether any agreement between the alleged obligor and obligee *was ever concluded*." Id. at 444 n.1 (emphasis added). Thus, *Buckeye* did not speak to decisions holding that it is for a court to decide "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent." *Id.* (citations omitted).

Just as *Buckeye* did not address disputes over whether an agreement was ever concluded between an obligor and obligee, we do not think *Buckeye* undermines our precedent in *I.S. Joseph* holding that the validity of an assignment is a matter for the court. One of the principal authorities on the assignment question explains why

decisions involving "severability" of arbitration clauses in challenges to contract validity are not applicable to disputes over an assignment:

> This case is quite different from those involving fraud in the inducement, *e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* In those cases, an agreement to arbitrate was reached by the parties; the fraud alleged went not to the agreement to arbitrate but to the substance of the contract. The arbitration clauses were held separable, and the issue of fraud in the inducement was sent to arbitration. That approach is not available here; it accomplishes nothing to treat the arbitration clause separately if [the purported assignee of a licensor] is not a party to it. Therefore, before ordering [the licensee] to arbitration, the district court should have first determined whether there was an agreement to arbitrate between [the licensee] and [the purported assignee].

*American Safety*, 391 F.2d at 829 (citations omitted). Similarly here, it "accomplishes nothing" to treat the arbitration clause of Koch's credit agreement separately if Jefferson Capital was never a party to it. Accordingly, we believe the district court was correct to address in the first instance whether FNANB's assignment to Jefferson Capital was valid, such that Jefferson Capital was a party to the credit agreement with Koch.

In this case, the existence of an arbitration agreement between the parties depends on whether the assignment of Koch's account from FNANB to Jefferson Capital was valid. *See I.S. Joseph*, 803 F.2d at 399-400; *Am. Safety*, 391 F.2d at 829. State law governs this determination, *see Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 791 (8th Cir. 1998), and the parties do not dispute the district court's decision to apply Arkansas law. Under Arkansas law, the elements of a valid assignment are "delivery of the subject matter with intent to make an immediate and complete transfer of all right, title, and interest from the assignor to the assignee." *Keller v. Bass Pro Shops, Inc.*, 15 F.3d 122, 125 (8th Cir. 1994). Because "an assignor can assign only what he has," *Day v. Case Credit Corp.*, 427 F.3d 1148, 1153 (8th Cir. 2005) (internal

quotations omitted), the assignor must have some "present interest in the subject matter of the contract" to effectuate an assignment. *Beal Bank, S.S.B. v. Thornton*, 19 S.W.3d 48, 51 (Ark. App. 2000) (internal quotation omitted). Thus, in order to meet the elements of an assignment under Arkansas law, FNANB must have had some remaining interest in Koch's account at the time of the attempted assignment.

Koch argues that FNANB had no remaining interest in her account, because she had settled her debt with the company, and was released from her obligations under the credit agreement. We disagree. Even if the underlying credit agreement was terminated by the settlement, such a termination does not necessarily release the parties from their obligations under that agreement, including the obligation to arbitrate. *See, e.g., Litton Fin. Printing v. NLRB*, 501 U.S. 191, 205 (1991). To the contrary, there is "a presumption in favor of postexpiration arbitration of matters unless negated expressly or by clear implication." *Id.* at 204 (internal quotation omitted); *see also Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 255 (1977); *Zucker v. After Six, Inc.*, 174 F. App'x 944, 947 (6th Cir. 2006) (concluding that although *Litton* and *Nolde Bros.* involved collective bargaining agreements, "their holdings are based upon principles applicable to arbitration agreements generally, and their application need not be limited to the collective bargaining context."). Because the obligation to arbitrate those "matters and disputes arising out of the relation governed by contract" continues even after the expiration of the agreement, Koch's claim that she was released from all of her obligations when she settled her debt is erroneous. *Id.*

This continuing obligation to arbitrate gave FNANB a "present interest" in the contract even after Koch settled her debt. Thus, FNANB had something to assign to Jefferson Capital on August 31, 2005, and the assignment is valid. Through the assignment, Jefferson Capital assumed all of FNANB's remaining rights and obligations under the contract.

Of course, Jefferson Capital did not obtain an unlimited right to compel arbitration against Koch. Jefferson Capital's ability to compel arbitration is limited to "matters and disputes arising out of the relation governed by contract." *Litton*, 501 U.S. at 204. "A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* at 205-06.

The question then is whether a claim for a debt incurred during the contract period and pursuant to the credit agreement, even if ultimately unfounded, fits within one of the three categories outlined in *Litton*. We think it does. Even assuming that Koch's debt had been extinguished before the assignment, and that the collection attempts by the defendants were erroneous, the heart of the dispute – the occurrence and alleged payment of the debt – is one founded in the credit agreement. Although Koch argues that the dispute centers around the defendants' illegal actions, and has "nothing to do with the credit arrangement at one time defined by the Cardholder Agreement," she also admits that the defendants' collection efforts were based – rightly or wrongly – on a debt incurred under the now-defunct credit agreement. The dispute between Koch and the defendants thus involves "facts and occurrences that arose before expiration" of the credit agreement, making it a dispute "aris[ing] under the contract." *Litton*, 501 U.S. at 206; *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 367-68 (E.D. Pa. 2003).

To be subject to arbitration, the dispute must also fall within the scope of the arbitration clause. *See Litton*, 501 U.S. at 205; *Nolde Bros.*, 430 U.S. at 252-53. The arbitration clause here is broad, covering "any claim, dispute, or controversy arising from or related to either this Agreement or the relationships that result from this Agreement." A dispute over the collection of a debt incurred under the credit agreement is a "controversy arising from or related to . . . this Agreement," so Koch's

claim "would have been subject to [arbitration] had it arisen during the contract's term." *Nolde Bros.*, 430 U.S. at 252. Nothing in the arbitration clause excludes from its operation a dispute which arises under the contract, but which is based at least in part on events that occur after its termination. *Id.* at 252-53. Thus, the arbitration provision applies to the dispute between Koch and Jefferson Capital.

For these reasons, we reverse the decision of the district court and remand with directions to grant the defendants' motion to compel arbitration.

_____