COLLOTON, Circuit Judge,
concurring in the judgment in part and dissenting in part.
The principal question on this appeal is whether the antitrust plaintiffs in this case are required to arbitrate their claims against the wholesale grocer defendants, SuperValu, Inc. and C&S Wholesaler Grocers, Inc. I conclude that the claims brought by Village Market against Super-Valu are subject to arbitration, and I would therefore reverse the decision of the district court in relevant part.
From April 2001 through September 2003, Village Market and SuperValu were parties to a supply agreement that was accompanied by an arbitration agreement. The arbitration agreement required arbitration of “[a]ny controversy, claim or dispute of whatever nature arising between [Village Market] and SUPERVALU ..., including but not limited to those arising out of or relating to any agreement between the parties.” App. 106.
In September 2003, as part of an asset exchange between SuperValu and C&S, SuperValu assigned its agreements with Village Market to C&S. Village Market later brought an antitrust claim against SuperValu, alleging that SuperValu conspired with C&S in violation of the Sherman Act. For several years, the parties have litigated whether Village Market should be compelled to submit its antitrust claim against SuperValu to arbitration. See In re Wholesale Grocery Prods. Antitrust Litigation, 707 F.3d 917 (8th Cir. 2013).
In this appeal, SuperValu contends that because Village Market alleges an antitrust conspiracy that began while the parties were subject to an agreement that required arbitration of such a claim, Village Market should be compelled to submit the antitrust claim to arbitration. Applying the principles set forth in Litton Financial Printing Division v. NLRB, 501 U.S. 190, 111 S.Ct. 2215 (1991), and Koch v. Compucredit Corporation, 543 F.3d 460 (8th Cir. 2008), I would direct the district court to compel arbitration. That Supervalu later assigned the arbitration agreement to C&S does not eliminate Village Market’s obligation to arbitrate a dispute that involves facts and occurrences that arose before the assignment.
Litton raised the question whether parties to a collective bargaining agreement with an arbitration clause had a duty to arbitrate grievances that were brought by a union after the expiration of the agreement. Litton applied Nolde Brothers, Inc. v. Bakery Workers, 430 U.S. 243, 97 S.Ct. 1067 (1977), which found in the context of an expired agreement that there were “strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract.” Id. at 204, 111 S.Ct. 2215. Nolde Brothers established “a presumption in favor of postexpiration arbitration of matters unless ‘negated expressly or by clear implication,’ ” id. at 204, 111 S.Ct. 2215 (quoting Nolde Brothers, 430 U.S. at 255, 97 S.Ct. 1067), as long as the arbitration was “of matters and disputes arising out of the relation governed by contract.” Id.
Litton clarified that Nolde Brothers applies “only where a dispute has its real *352 source in the contract.” Id. at 205, 111 S.Ct. 2215. In other words, “[t]he Nolde Brothers presumption is limited to disputes arising under the contract.” Id. “A postexpiration grievance,” the Court explained, “can be ■ said to arise under the contract only where [1] it involves facts and occurrences that arose before expiration, [2] where an action taken after expiration infringes a right that accrued or vested under the agreement, or [3] where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.” Id. at 206, 111 S.Ct. 2215. Because the employee layoffs at issue in Litton took place almost one year after expiration of the agreement, and the second and third categories were not implicated, the grievance was not arbitrable. Id. at 209-10, 111 S.Ct. 2215.
In Koch, this court applied Litton outside the context of collective bargaining. Koch involved a credit agreement with an arbitration clause. A credit card obligor alleged violations of the Federal Debt Collection Practices Act by the creditor, and assignees of the original creditor sought to compel arbitration. We concluded that even though the underlying credit agreement arguably was terminated by an earlier settlement, the obligation of the parties to arbitrate disputes arising under the contract survived any termination. Because the dispute at issue there involved facts and occurrences -that arose before expiration of the credit agreement, it was a dispute “aris[ing] under the contract.” 543 F.3d at 466 (quoting Litton, 501 U.S. at 206, 111 S.Ct. 2215). The dispute also fell within the scope of the arbitration clause, which covered “any claim, dispute, or controversy arising from or related to the Agreement.” Id. Because the obligor’s claim “would have been subject to [arbitration] had it arisen during the contract’s term,” id. (quoting Nolde Bros., 430 U.S. at 252, 97 S.Ct. 1067), and nothing in the arbitratioii clause excluded a dispute that was based in part on events occurring after termination of the agreement, we directed the district court to compel arbitration. Id. at 466-67.
A similar analysis demonstrates that Village Market should be compelled to arbitrate its antitrust claim against Super-Valu. Village Market’s antitrust claim involves facts and occurrences that arose before SuperValu assigned the arbitration agreement in September 2003: the claim is that SuperValu formed an antitrust conspiracy while negotiating an asset exchange agreement with C&S between July and September 2003. Although the arbitration agreement was assigned in September 2003, the evidence does not clearly negate a presumption that the parties intended to arbitrate matters that arose under the contract before the assignment. If, for example, Village Market and SuperVa-lu found themselves in a mine-run dispute under the supply agreement based on events in July 2003, there is nothing in the various agreements to suggest that the parties wanted that dispute litigated in federal court just because SuperValu assigned the arbitration agreement to C&S in September 2003. The Asset Exchange Agreement did not transfer pre-assignment liabilities. Although the instant claim asserts an antitrust violation rather than a breach of the supply agreement, the broad arbitration agreement covers it: “[a]ny controversy, claim or dispute of whatever nature arising between [Village Market] and SUPERVALU” must be arbitrated.
In rejecting SuperValu’s position, the court declines to apply the Nolde Brothers presumption of intent to arbitrate when a contract is assigned, apparently because an assignor “generally has control over whether and when they transfer their own rights.” Ante, at 350. But of course a con *353 tracting party generally has control over the expiration of a contract too: the termination date is a negotiated term of the agreement. The point of Nolde Brothers is that even when parties intentionally cause a contractual relationship to end, there are strong reasons to believe that the parties intend to retain arbitration duties for disputes arising under the contract. A contrary rule “would preclude the entry of a post-contract arbitration order even when the dispute arose during the life of the contract but arbitration proceedings had not begun before termination. The same would be true if arbitration processes began but were not completed, during the contract’s term.” 430 U.S. at 251, 97 S.Ct. 1067. The Court thought “it could not seriously be contended in either instance that the expiration of the contract would terminate the parties’ contractual obligation to resolve such a dispute in an arbitral, rather than a judicial forum,” id. yet the majority reaches precisely that unlikely conclusion here.
In a footnote, ante, at 350-51 n.4, the majority also questions whether assignment of the agreement extinguished Su-perValu’s right to compel arbitration. But the cited decision of a district court — accepting a broad allegation as true on a motion to dismiss — said only that the extent to which an assignment transferred the right to compel arbitration was “an unresolved issue.” HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc., 590 F.Supp.2d 677, 684 (D.N.J. 2008). Two other district courts have concluded that an assignor seeking to arbitrate a dispute arising before the assignment is still a “party aggrieved” who may compel arbitration under the Federal Arbitration Act. Vainqueur Corp. v. Lamborn & Co., 305 F.Supp. 1007, 1008 (S.D.N.Y. 1969); Stations West, LLC v. Pinnacle Bank of Oregon, No. CIV 06-1419-KI, 2007 WL 1219952, at *3 (D. Or. Apr. 23, 2007). Consistent with our circuit precedent in Koch, the better view is that unless there is persuasive evidence that parties intended to extinguish a duty to arbitrate disputes that are based in part on facts that arose before an assignment, the arbitration agreement continues in effect as to those disputes. Accordingly, I would direct the district court to compel arbitration of Village Market’s claim against SuperValu.[5]
As to the appeal by C&S concerning arbitration of the antitrust claim brought by Millennium Operations, I concur in the judgment affirming the district court. It is doubtful that C&S actually acquired Millennium’s supply agreement after Fleming Companies went through bankruptcy. The Asset Exchange Agreement required C&S to “use reasonable best efforts to cause Fleming to convey” the assets at issue “directly to SuperValu.” In any event, the scope of Millennium’s arbitration agreement was narrower than Village Market’s. It provided only for arbitration of disputes “relating to this Agreement,” and alleged unlawful restraint of trade is not conduct relating to the retail supply agreement. See In re Wholesale Grocery Products, 707 F.3d at 923-24. I also agree with the court that C&S cannot compel arbitration under a “close relationship” theory.
For these reasons, I would affirm the decision of the district court concerning the claim of Millennium Operations, but *354 reverse the decision concerning Village Market and remand with directions to compel arbitration of Village Market’s claim against SuperValu.
ORDER
May 1, 2017
' The petitions for rehearing, en banc are denied. The petitions for rehearing by the panel are also denied.

. The majority’s effort, ante, at 350, to glean support from the "logic” of Koch is unpersuasive. In Koch, an assignor transferred, pre-assignment assets and liabilities to an assign-ee, and the assignee was then entitled to compel arbitration of a pre-assignment dispute. Here, the assignor retained pre-assignment liabilities, and Koch says nothing to undermine the presumption that pre-assignment disputes arising under the contract remain subject to arbitration under the terms of the original agreement.