# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Cleo Sanders, Respondent,

v.

Savannah Highway Automotive Company, a General Partnership d/b/a Rick Hendrick Dodge Chrysler Jeep Ram; Santander Consumer USA Holdings, Inc.; Isiah S. White; Danny Anderson; and Patrick Bachrodt Jr., Defendants,

of which Savannah Highway Automotive Company, a General Partnership d/b/a Rick Hendrick Dodge Chrysler Jeep Ram, and Isiah S. White are the Petitioners.

Appellate Case No. 2021-000137

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
J.C. Nicholson Jr., Circuit Court Judge

---

Opinion No. 28168
Heard April 28, 2022 – Filed July 26, 2023

---

## REVERSED AND VACATED

---

John Thomas Lay Jr. and Jessica Waller Laffitte, of Gallivan, White & Boyd, PA, of Columbia, for Petitioners.

C. Steven Moskos, of C. Steven Moskos, PA, of Charleston, and Brooks Robert Fudenberg, of Law Office of Brooks R. Fudenberg, LLC, of Charleston, for Respondent.

James Y. Becker and Robert Lawrence Reibold, of Haynsworth Sinkler Boyd, P.A., of Columbia, for Amicus Curiae the South Carolina Automobile Dealers Association.

---

**JUSTICE JAMES:** The Federal Arbitration Act[1] (FAA) sometimes requires the arbitrator to decide not only the merits of a dispute but also the gateway question of whether the dispute is arbitrable in the first instance. Petitioners Rick Hendrick Dodge Chrysler Jeep Ram (Rick Hendrick Dodge) and Isiah White contend this is such a case. Specifically, Petitioners argue the arbitrator—not the circuit court— must decide whether they can enforce an arbitration provision in a contract even after that contract has been assigned to a third party. The court of appeals rejected this argument and affirmed the circuit court's determinations that (1) the circuit court was the proper forum for deciding the gateway question of whether the dispute is arbitrable and (2) Petitioners could not compel arbitration because Rick Hendrick Dodge assigned the contract to a third party. *Sanders v. Savannah Highway Auto. Co.*, 432 S.C. 328, 332-34, 852 S.E.2d 744, 746-47 (Ct. App. 2020).

We hold the *Prima Paint*[2] doctrine requires the arbitrator to decide whether the assignment extinguished Petitioners' right to compel arbitration. Therefore, we reverse the court of appeals' decision and vacate the circuit court's discovery order.

### Background

In August 2012, Cleo Sanders purchased a vehicle from Rick Hendrick Dodge. Sanders and Rick Hendrick Dodge closed the deal by executing a retail installment sales contract (RISC) containing an arbitration provision. A portion of the arbitration provision provides:

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and

---

[1] 9 U.S.C. § 1 *et seq.*

[2] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

Sanders alleges Rick Hendrick Dodge contacted Santander Consumer USA Holdings, Inc. (Santander) in an effort to assign the RISC to Santander. Among other allegations of wrongdoing, Sanders alleges Rick Hendrick Dodge misrepresented his income to Santander, thus causing Santander to accept an assignment of the RISC. Sanders contends that as a result of Rick Hendrick Dodge's wrongful acts, he had a monthly payment that was thirty-seven percent of his true pretax monthly income. Sanders did not make timely payments under the RISC, so Santander repossessed the vehicle. Sanders commenced this action against Rick Hendrick Dodge, Santander, Isiah White, Danny Anderson, and Patrick Bachrodt.[3]

Petitioners answered and moved to stay or dismiss the case and compel arbitration.[4] Sanders then moved to compel discovery. Sanders argued Petitioners could not compel arbitration because Rick Hendrick Dodge assigned in full its rights and interests under the RISC to Santander. Petitioners acknowledged Rick Hendrick Dodge "fully assigned" the RISC to Santander but claimed the arbitrator—not the circuit court—should decide the gateway question of whether the arbitration provision is enforceable. The circuit court determined it was the proper forum for deciding the gateway arbitrability question and ruled on the merits of Sanders' challenge to arbitration. On the gateway arbitrability question, the circuit court determined that although the FAA applied, South Carolina law governed "the enforceability of the arbitration clause." The circuit court ruled that because Rick Hendrick Dodge assigned "all of its interests in the [RISC] to Santander," Petitioners' right to compel arbitration was extinguished. The circuit court denied Petitioners' motion to compel arbitration, and Petitioners appealed.

A few weeks after Petitioners appealed, the circuit court granted Sanders' motion to compel discovery. The circuit court ordered Rick Hendrick Dodge to respond to Sanders' discovery requests in thirty days and ruled Rick Hendrick Dodge

---

[3] White, Anderson, and Bachrodt were representatives of Rick Hendrick Dodge.

[4] The circuit court granted Sanders' motion to dismiss Santander from the case without prejudice.

would waive its right to arbitration by responding to discovery. Petitioners appealed the discovery order.

The court of appeals consolidated the appeals and affirmed the circuit court. *Sanders*, 432 S.C. at 331, 852 S.E.2d at 745. Like the circuit court, the court of appeals held Petitioners could not compel arbitration after the assignment: "Because Rick Hendrick Dodge assigned the RISC to Santander, we find all alleged rights arising from the contract, including the right to have an arbitrator determine the arbitrability of the action and the right to arbitrate, were extinguished as to [Petitioners]." *Id.* at 334, 852 S.E.2d at 746-47. Apart from the passing mention of Rick Hendrick Dodge's "right to have an arbitrator determine the arbitrability of the action[,]" the court of appeals did not discuss Petitioners' argument that the arbitrator should decide that gateway question. The court of appeals also held the circuit court had authority to issue the discovery order.

The court of appeals denied Petitioners' petition for rehearing and suggestion for rehearing en banc. We granted Petitioners a writ of certiorari to review the court of appeals' decision.

## Discussion

Petitioners contend the court of appeals erred in affirming the circuit court's arbitration ruling. We review this issue de novo. *See Chassereau v. Global-Sun Pools, Inc.*, 363 S.C. 628, 631, 611 S.E.2d 305, 307 (Ct. App. 2005) ("Appeal from the denial of a motion to compel arbitration is subject to de novo review."). However, we must honor the factual findings of the circuit court pertinent to its arbitration ruling if those findings are reasonably supported by evidence in the record. *Partain v. Upstate Auto. Grp.*, 386 S.C. 488, 491, 689 S.E.2d 602, 603 (2010).

Our holding in this case is not controlled by what Petitioners refer to in their brief as the "heavily-favored arena of arbitration." We recently addressed the notion that the law "favors" arbitration in *Palmetto Construction Group, LLC v. Restoration Specialists, LLC*, 432 S.C. 633, 856 S.E.2d 150 (2021). We noted: "[O]ur statements that the law 'favors' arbitration mean simply that courts must respect and enforce a contractual provision to arbitrate as [they] respect[] and enforce[] all contractual provisions. There is, however, no public policy—federal or state—'favoring' arbitration." *Id.* at 639, 856 S.E.2d at 153.

## I.    Arbitration Appeal

Petitioners do not ask this Court to reverse the court of appeals' holding that the assignment extinguished their right to arbitration. While Petitioners assert—in their brief and during oral argument—their right to arbitration was <u>not</u> extinguished by the assignment,[5] Petitioners ask this Court to hold only that the FAA requires the arbitrator to decide the gateway question of whether the assignment extinguished their right to arbitration.

Petitioners raise two arguments in support of their position that the arbitrator must decide Sanders' challenge to arbitration. First, they claim that because Sanders did not specifically challenge the validity of the arbitration provision, the *Prima Paint* doctrine requires the arbitrator to resolve Sanders' challenge. Second, Petitioners contend the parties contracted for the arbitrator to resolve Sanders' challenge to arbitration by including a delegation clause in their agreement. We begin our analysis with a review of general FAA provisions concerning arbitrability.

### A. The FAA and Gateway Arbitration Issues

The parties concede Sanders' transaction with Rick Hendrick Dodge involved interstate commerce and is, therefore, governed by the FAA. The FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2. The FAA recognizes arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Here, Sanders' challenge—or defense—to arbitration is that Petitioners lost the right to arbitration after Rick Hendrick Dodge assigned the RISC to Santander.

---

[5] Petitioners claim the assignment of a contract containing an arbitration provision does not always extinguish the assignor's right to arbitration. Specifically, Petitioners contend they retained the right to arbitration after assignment because of a "survival clause" in the arbitration provision. These arguments are for the arbitrator to resolve.

When one party challenges another party's right to invoke an arbitration provision, the gateway question sometimes becomes: Does the court or the arbitrator decide whether the dispute is arbitrable? *See Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 101 (4th Cir. 2012) ("Arbitrability disputes often necessitate a two-step inquiry. First, we determine *who* decides whether a particular dispute is arbitrable: the court or the arbitrator. Second, if we conclude that the court is the proper forum in which to adjudicate arbitrability, we then decide *whether* the dispute is, in fact, arbitrable." (citation omitted)). Under the FAA, the presumptive answer is that <u>the court</u>—rather than the arbitrator—resolves gateway questions of arbitrability such as whether an arbitration provision is enforceable and whether the provision applies to a particular dispute. *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250-51 (2d Cir. 2019); *see Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001) ("The question of the arbitrability of a claim is an issue for judicial determination, unless the parties provide otherwise.").

This case represents one instance in which the *Prima Paint* doctrine renders muddy what should be clear. Petitioners cite two situations in which the arbitrator must decide certain gateway questions. First, in *Prima Paint* and subsequent decisions, the United States Supreme Court held challenges to the contract containing an arbitration provision (sometimes referred to as the "container contract") are for the arbitrator to decide, while challenges to the arbitration provision itself are for the court to decide. *See Prima Paint*, 388 U.S. at 406; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Second, the Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

## B. *Prima Paint*

The *Prima Paint* doctrine has been roundly criticized, and some of the caselaw interpreting and applying the doctrine is unnecessarily muddled. *See, e.g.*, *Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116, 121 (Colo. 2007) ("The 'separability doctrine' of *Prima Paint* has been criticized throughout its 40-year existence, beginning with Justice Black's heated dissent from the Court's opinion."); Zeb-Michael Curtin, *Rethinking Prima Paint Separability in Today's Changed Arbitration Regime: The Case for Inseparability and Judicial Decisionmaking in the Context of Mental Incapacity Defenses*, 90 Iowa L. Rev. 1905, 1917 (2005) (noting

legal scholars have "condemn[ed] the [separability] doctrine's consequences"). Even so, we must apply the *Prima Paint* doctrine in cases governed by the FAA.

In *Prima Paint*, the petitioner alleged it was fraudulently induced by the respondent into entering a contract that contained an arbitration provision. 388 U.S. at 397-98. The petitioner did not challenge the arbitration provision directly but instead claimed that because the contract was void, so too was the arbitration provision. The respondent moved to compel arbitration. Applying the FAA, the United States Supreme Court held the arbitrator had to resolve the petitioner's claim. In reaching this decision, the Supreme Court adopted what has become known as the severability (or separability) doctrine: "[A]rbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded[.]" *Id.* at 402; *see also Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001). The Supreme Court explained the judiciary's role is constrained by the FAA, and a "court may consider only issues relating to the making and performance of the agreement to arbitrate." 388 U.S. at 404. The Supreme Court held that because the petitioner's claim of fraudulent inducement did not challenge the arbitration provision specifically, the claim was for the arbitrator to resolve:

> If the claim is fraud in the inducement of the arbitration clause itself—
> an issue which goes to the making of the agreement to arbitrate—the
> federal court may proceed to adjudicate it. But the statutory language
> does not permit the federal court to consider claims of fraud in the
> inducement of the contract generally.

*Id.* at 403-04 (cleaned up). The takeaway from *Prima Paint* is that the scope of the challenge to a party's right to invoke arbitration is critical.

Since *Prima Paint*, courts have generally recognized two types of challenges to arbitration: (1) challenges to the validity of the container contract as a whole and (2) challenges to the validity of the arbitration provision contained in the contract. *See Rent-A-Ctr.*, 561 U.S. at 70; *Buckeye*, 546 U.S. at 444. Under the *Prima Paint* doctrine, the arbitrator decides the first type of challenge, and the court decides the second type. *See Rent-A-Ctr.*, 561 U.S. at 70; *Buckeye*, 546 U.S. at 445-46.

We have applied the *Prima Paint* doctrine on several occasions. We recently stated:

> Pursuant to the *Prima Paint* doctrine, the FAA requires courts to
> separate the validity of an arbitration clause from the validity of the
> contract in which it is embedded. *Munoz v. Green Tree Fin. Corp.*, 343

S.C. 531, 540, 542 S.E.2d 360, 364 (2001) (citing *Prima Paint*, 388 U.S. at 395). The validity of the arbitration clause is a matter for the courts, whereas the validity of the contract as a whole is a matter for the arbitrator. *Buckeye*, 546 U.S. at 445-46 ("Unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

*Damico v. Lennar Carolinas, LLC*, 437 S.C. 596, 608-09, 879 S.E.2d 746, 753 (2022) (cleaned up). We have held the court may hear a claim that an arbitration provision is unconscionable, but the arbitrator must hear a claim that the contract as a whole is unconscionable. *Compare Smith v. D.R. Horton, Inc.*, 417 S.C. 42, 48-49, 790 S.E.2d 1, 4 (2016) (holding the question of whether an arbitration provision is unconscionable is for the court to decide), *with Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 361 S.C. 544, 555, 606 S.E.2d 752, 758 (2004) (holding the arbitrator must hear an unconscionability challenge where the party seeking to avoid arbitration "failed to allege that it lacked a meaningful choice as to the arbitration clause specifically"). However, as is often the case, the application of *Prima Paint* to a given set of facts is not so simple. Here, the parties seeking to enforce arbitration had assigned the contract containing the arbitration provision.

### 1. The Parties' Arguments

Petitioners argue Sanders' challenge to arbitration was not directed to the arbitration provision specifically. Rather, Petitioners claim Sanders challenged only their ability to enforce the RISC as a whole, thus making Sanders' challenge one for the arbitrator to decide. We agree with Petitioners.

Sanders acknowledges he has not challenged the validity of the arbitration provision specifically. Therefore, it would seem Sanders' challenge is to the contract as a whole and that the *Prima Paint* doctrine mandates this challenge be decided by the arbitrator. Not so fast, says Sanders. Sanders claims that after Rick Hendrick Dodge assigned the contract to Santander, the agreement between him and Rick Hendrick Dodge ceased to exist. Sanders claims the court must decide his challenge—even though it is directed to the contract as a whole. As we will now explain, Sanders' argument is without merit.

### 2. Courts Resolve Issues of Contract Formation

As we explained above, there are generally two types of challenges to arbitration—a challenge to the validity of the container contract as a whole (to be decided by the arbitrator) and a challenge to the validity of the arbitration provision

therein (to be decided by the court). *See Rent-A-Ctr.*, 561 U.S. at 70; *Buckeye*, 546 U.S. at 444-46. Some courts have recently held the <u>court</u> must decide a party's contention that the container contract was never formed in the first place. *See, e.g.*, *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); *Spahr v. Secco*, 330 F.3d 1266, 1272-73 (10th Cir. 2003).

The Supreme Court of Texas confronted a contract formation challenge in *In re Morgan Stanley & Co.*, 293 S.W.3d 182 (Tex. 2009). There, a Morgan Stanley client sought to avoid arbitration by claiming she lacked mental capacity to sign Morgan Stanley contracts containing arbitration provisions. Morgan Stanley argued the arbitrator had to decide the client's challenge because "the defense of mental incapacity is an attack on the validity of the contract as a whole[.]" *Id.* at 185. The court rejected Morgan Stanley's argument, noting the important distinction between issues of contract validity and issues of contract formation. The court held that because issues of contract formation necessarily raise the question of whether an arbitration agreement was ever created, such issues are for the court to decide. The court stated challenges to contract formation "add a third discrete category to the *Prima Paint* analysis, which includes: (1) a challenge to the validity of the contract as a whole, (2) a challenge to the validity of the arbitration provision itself, and (3) a challenge to whether any agreement was ever concluded." *Id.* at 187. The court explained that while the first challenge is for the arbitrator, the second and third challenges are for the court.

Other courts have also held the *Prima Paint* doctrine does not prevent a court from deciding various challenges contract formation. *Melaas v. Diamond Resorts U.S. Collection Dev., LLC*, 953 N.W.2d 623, 632-33 (N.D. 2021); *see, e.g.*, *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir. 2000) (holding a court had to decide whether a representative possessed authority to bind his principal to a contract containing an arbitration provision); *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (stating courts are "required to rule upon . . . contract formation issue[s] before compelling arbitration"). The rationale of these decisions is obvious—arbitration is a matter of consent, and courts can only order arbitration when they are satisfied the parties agreed to arbitrate a dispute. *Granite Rock*, 561 U.S. at 299. Accordingly, the court is always the proper body to determine whether the parties agreed to arbitrate in the first instance. *Id.* at 299-300; *Melaas*, 953 N.W.2d at 633 ("If the contract containing the arbitration agreement was never formed and therefore does not exist, then the parties never agreed to arbitrate."); *MZM Constr. Co. v. N.J. Bldg. Labs. Statewide Benefit Funds*, 974 F.3d 386, 400 (3d Cir. 2020) ("Lack of assent to the container contract necessarily implicates the

status of the arbitration agreement, when the container contract and the arbitration provision depend on the same act for their legal effect.").

### 3. Sanders' "Continued Existence" Argument Is Misplaced

It is clear courts must determine issues of contract <u>formation</u>. If Sanders challenged arbitration by claiming the contract was never formed (e.g., because he never signed it or because there was no meeting of the minds), the court would decide the gateway question of arbitrability. But Sanders does not challenge contract formation. Instead, Sanders claims the court must determine whether the contract continued to exist after a certain point in time—even when, as here, the parties concede a valid contract was originally formed. We disagree with Sanders.

Some cases include language that, on the surface, appears helpful to Sanders' argument. For instance, courts often state that they—rather than arbitrators—must determine whether a contract exists. However, a closer review of these cases shows courts were addressing the question of whether a contract existed in the first place, not whether the contract <u>continued</u> to exist after a certain point. *See, e.g.*, *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 219 (5th Cir. 2003) (stating the court must resolve an attack to "the very existence of an agreement" where a party claims that not all parties signed the agreement containing the arbitration provision); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001) (stating the arbitrator cannot resolve an "argument that the contract does not exist" where a party challenges an agent's authority to bind him to a contract containing arbitration provision); *Thompson v. Lithia Chrysler Jeep Dodge of Great Falls, Inc.*, 185 P.3d 332, 400 (Mont. 2008) (stating "the court is the proper body to hear a challenge to the existence of a contract containing an arbitration provision" where a party challenges arbitration on the ground that a condition precedent to the creation of a container contract did not occur).

One case speaks more directly to the issue before us. In *Large v. Conseco Finance Servicing Corp.*, the United States Court of Appeals for the First Circuit rejected an argument similar to the one Sanders advances. 292 F.3d 49, 52 (1st Cir. 2002). The Larges borrowed money from Conseco and signed a loan agreement containing an arbitration provision. A year later, the Larges told Conseco they were rescinding the loan agreement on the ground that Conseco failed to accurately disclose the applicable interest rate. When Conseco responded that it made adequate disclosures and rescission was not appropriate, the Larges filed suit in district court. Conseco moved to compel arbitration, and the Larges opposed on the ground that the arbitration provision had been automatically rescinded—along with the remainder of the loan agreement—when they gave Conseco notice of rescission.

The district court granted Conseco's motion to compel arbitration, ruling the matter was for the arbitrator "absent an attack on the specific arbitration clause included within a contract[.]" *Id.*

On appeal, the Larges advanced much the same argument Sanders makes here. They claimed that because the "loan agreement ceased to exist . . . so did the arbitration clause embedded in it." *Id.* The Larges further claimed the district court "overlooked the recent clarifications by the majority of circuits, which found that the [*Prima Paint* severability] doctrine does not apply to allegations of nonexistent contracts." *Id.* at 53 (alteration in original). The First Circuit rejected this argument:

> [T]he Larges cite cases involving allegations that the contract with the arbitration clause *never* existed. The "clarification" of *Prima Paint* in these cases does not bear on a dispute over a purported rescission of a contract that is acknowledged to have once existed[] but is alleged to have been rescinded subsequently.

*Id.* The First Circuit concluded the Larges' allegation of a non-existent contract was immaterial to the *Prima Paint* analysis. Because the challenge to arbitration was directed at the loan agreement as a whole, the First Circuit held the challenge was for the arbitrator to decide.

We agree with the First Circuit and reject Sanders' "contract existence" argument for two reasons. First, Sanders' argument rests on a misreading of contract formation cases; there is no support for the conclusion that a challenge to the continued existence of a container contract is for the court to decide under the *Prima Paint* doctrine. Second, there is good reason to treat a challenge to the original formation of a container contract differently from a challenge to the continued existence of the contract. As stated above, a challenge to the original formation of the container contract necessarily raises the question of whether the parties <u>ever</u> agreed to arbitrate. *See Granite Rock*, 561 U.S. at 299-300. Because arbitration is strictly a matter of consent, it would be illogical for the arbitrator to resolve such a challenge. *See id.*; *All Am. Ins.*, 256 F.3d at 591. On the other hand, continued contract existence cases—like the one before us—typically present no such risk of sending a party to arbitration when that party <u>never</u> agreed to arbitrate.

Here, Sanders does not challenge the validity of the arbitration provision itself—for example, he does not argue the provision is unconscionable or that it expires on some express condition. Sanders concedes the arbitration provision would ordinarily require arbitration of the claims he makes against Petitioners. However, Sanders argues Petitioners' assignment of the contract to Santander

divested Petitioners of all rights under the contract. This is a challenge to the continuing validity of the contract as a whole. Therefore, *Prima Paint* requires the arbitrator to decide whether Petitioners retained the right to compel arbitration after assignment.

As did the court of appeals, the dissent relies upon *In re Wholesale Grocery Products Antitrust Litigation*, 97 F. Supp. 3d 1101, 1106 (D. Minn. 2015), *aff'd*, 850 F.3d 344 (8th Cir. 2017), in support of the general conclusion that an assignment erases the assignor's right to compel arbitration. The *Wholesale Grocery* court noted that "where a party assigns agreements that include an arbitration clause, the assignor's 'right to compel arbitration under those agreements is extinguished.'" *Id.* (quoting *HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc.*, 590 F. Supp. 2d 677, 684-85 (D.N.J. 2008)). However, the courts in *Wholesale Grocery* and *HT of Highlands Ranch* were not asked to address, nor did they address, the question of whether the arbitrator or the court decides the gateway question of arbitrability.[6]

### B. Delegation Clause

In light of our holding, we need not consider Petitioners' delegation clause argument. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing that an appellate court need not address remaining issues when the resolution of a prior issue is dispositive).[7]

### C. Discovery Appeal

Because we reverse the court of appeals on the gateway issue of arbitrability, we vacate the circuit court's discovery order.

---

[6] The court of appeals cited *Kennamer v. Ford Motor Credit Co.*, 153 So.3d 752, 762-63 (Ala. 2014), for the basic proposition that assignment of a contract containing an arbitration provision bars the assignor from enforcing the provision. However, the *Kennamer* court was not asked to address, nor did it address, the gateway *Prima Paint* question of whether the court or the arbitrator decides whether a dispute is arbitrable.

[7] Petitioners argue the court of appeals improperly created a blanket rule that an assignment always extinguishes the assignor's right to compel arbitration. Because we have reversed the court of appeals, there is no reason to address this argument. The arbitrator will have to determine whether this particular assignment extinguished Petitioners' right to arbitration.

## Conclusion

The *Prima Paint* doctrine is not the model of clarity; however, as applied to this case, the doctrine requires us to hold that the arbitrator must decide the gateway question of whether Petitioners retained the right to compel arbitration after assignment of the RISC.  We reverse the court of appeals' decision and vacate the circuit court's discovery order.

**REVERSED AND VACATED.**

**FEW, J., and Acting Justice Aphrodite K. Konduros, concur. Acting Justice Kaye G. Hearn, dissenting in a separate opinion in which Acting Justice James E. Lockemy, concurs.**

**Acting Justice Kaye G. Hearn:** I agree with the majority's discussion of the general principles governing arbitration, but I disagree that the answer to the threshold question of whether this dispute is subject to arbitration is for the arbitrator to decide. Because I believe well-established law establishes that the contractual assignment from Rick Hendrick Dodge to Santander Consumer USA Holdings, Inc. extinguished any enforceable rights by Rick Hendrick Dodge, there is nothing left to enforce, including the arbitration provision. I understand *Prima Paint* requires that the arbitration provision is severable, but once Rick Hendrick Dodge assigned its rights under the contract, I do not believe severability can save the day because Rick Hendrick Dodge is not the party that may enforce the contract.

I disagree with the majority's characterization of the cases the court of appeals relied on in concluding that the gateway question of arbitrability in this case was for the circuit court. The court of appeals relied in part on *In re Wholesale Grocery Product Antitrust Litigation,* a case involving allegations of antitrust violations by some of the largest wholesale grocers in the country. 97 F. Supp. 3d 1101, 1106 (D. Minn. 2015). In that multi-district litigation, the federal district court noted, "[W]here a party assigns agreements that include an arbitration clause, the assignor's 'right to compel arbitration under those agreements is extinguished.'" *Id.* (quoting *HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc.*, 590 F.Supp.2d 677, 684-85 (D.N.J. 2008)). Pointedly, the court stated, "the issue is not whether the right to arbitrate survives, but rather who is entitled to assert that right." *Id.* The court concluded the defendants were no longer signatories of the arbitration agreement because "they voluntarily and unconditionally transferred" the rights under the arbitration agreement. *Id.* As a result, they were not entitled to enforce the arbitration agreement.

On appeal to the Eighth Circuit, the court affirmed. 850 F.3d 344, 350-51 (8th Cir. 2017). The Eighth Circuit rejected the defendants' position that an assignment should be treated the same as when a contract is terminated, the latter being that a party generally retains the right to arbitrate claims that are based on conduct that occurred during the life of the contract. *Id.* at 349. Instead, the court stated, "We see no reason to extend a presumption about what rights and obligations the parties to a contract might have intended to keep after the contract expired to a situation where a party has affirmatively given up—indeed, sold—everything it had under the contract." *Id.* at 349-50 (cleaned up). The court also concluded, "[I]t is the assignors, not their assignees, claiming a right to compel arbitration. The clear consequence . . . is that the assignors—in this case, the nonsignatory wholesalers—should have nothing left to enforce, since 'all of [their] remaining rights' were 'assumed' by

someone else." *Id.* at 350 (quoting *Koch v. Compucredit Corp.*, 543 F.3d 460, 466 (8th Cir. 2008)).

Like the decision from the federal court in Minnesota, the court of appeals in this case also relied on *HT of Highlands Ranch, Inc. v. Hollywood Tanning Systems, Inc.*, 590 F. Supp. 2d 677 (D.N.J. 2008). There, operators of four franchisees of a national tanning business entered into a contract with the franchisor, which subsequently assigned its rights to another entity. *Id.* at 679. After the operators filed a lawsuit against the franchisor and others raising numerous allegations, the defendants filed a motion to dismiss the claims and compel arbitration. *Id.* at 683. The court denied the motion to dismiss and refused to compel arbitration, noting, "In light of the fact that, prior to the commencement of this action, Defendant HTS assigned its rights and obligations under the franchising agreements to Defendant HT Franchising . . . the Court cannot, at this stage, conclude that 'a valid agreement to arbitrate [presently] exists' between HTS and Plaintiffs." *Id.* at 684 (internal citation omitted).[8] The court concluded, "[I]f, as Plaintiffs appear to allege in the Amended Complaint, HTS assigned the entirety of its rights under the franchise agreements to HT Franchising, its right to compel arbitration under those agreements 'is extinguished.'" *Id.* at 684-85 (quoting Restatement (Second) of Contracts § 317(1)). The court acknowledged that the successor in interest would retain the right to compel arbitration, just as Santander could compel arbitration in this case over claims subject to the arbitration clause.

I agree with the court of appeals that these cases are persuasive because they apply the same general principle of contract law—that an assignment extinguishes the rights and obligations under an agreement once transferred to a third party. Restatement (Second) of Contracts § 317 (1981) ("An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the

---

[8] I disagree that this case does not concern the question of "who decides." First, the circuit court denied the motion to compel arbitration, noting "As the following discussion makes clear, the Court denies the HTS Defendants' motion on the narrow grounds that the validity of an existing arbitration agreement between HTS and Plaintiffs is a live question in this case." *Id.* at 684 n.6. Second, the court stated many of the plaintiffs' remaining arguments against compelling arbitration concerned the contract as a whole, and thus would be for the arbitrator to resolve. *Id.* This demonstrates the court treated the issue of the assignment's effect as a threshold question for the court to resolve while the remaining arguments would be for an arbitrator to decide, and thus, I disagree that it is not relevant to the question before the Court.

assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance."). Accordingly, I believe the majority places too fine a point on the slight distinction between whether an agreement to arbitrate ever existed versus if one continues to exist. To be sure, there are instances when a nonsignatory may be compelled to arbitrate a dispute. *See Wilson v. Willis*, 426 S.C. 326, 338, 827 S.E.2d 167, 174 (2019) ("South Carolina has recognized several theories that could bind nonsignatories to arbitration agreements under general principles of contract and agency law, including (1) incorporation by reference, (2) assumption, (3) agency, (4) veil piercing/alter ego, and (5) estoppel."). However, I would follow the general rule that an assignment extinguishes the rights under a contract, and without an agreement to enforce, it follows that the circuit court must generally resolve this threshold question. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.").[9] Accordingly, I respectfully dissent.

**Acting Justice James E. Lockemy, concurs.**

---

[9] I acknowledge parties may delegate gateway issues to an arbitrator that typically would be for a court to decide. *Henry Schein, Inc.*, 139 S. Ct. at 530 ("[A] court may not decide an arbitrability question that the parties have delegated to an arbitrator."). While this particular contract contained a delegation clause, Rick Hendrick Dodge failed to preserve the significance of this clause for appeal. Although it raised the delegation clause to the circuit court, the court did not rule on it and there was no Rule 59(e) motion filed. *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) ("If the losing party has raised an issue in the lower court, but the court fails to rule upon it, the party must file a motion to alter or amend the judgment in order to preserve the issue for appellate review.").